# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN F. KOLA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 13-cv-08923 |
| v. | ) |
| | ) Judge Andrea R. Wood |
| VILLAGE OF HARWOOD HEIGHTS, | ) |
| JOHN DEVRIES, and RONALD J. | ) |
| ZYNIEWICZ, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

On November 12, 2012, Defendant Ronald J. Zyniewicz was injured outside of the Landmark Pub, a drinking establishment in Harwood Heights, Illinois owned by Plaintiff John F. Kola. That night, the pub was the site of a charitable benefit hosted by a City of Chicago police sergeant and attended by several dozen police officers. Although Zyniewicz initially told an investigating Harwood Heights police officer that he could not recall how he became injured, he subsequently signed a sworn complaint naming Kola as his attacker. In addition to Zyniewicz's complaint, the Harwood Heights police also obtained a statement from a bartender at the pub who said that she saw Kola attack Zyniewicz. Although the police interviewed other witnesses who were present at the pub on the night in question, no one other than the bartender claimed to have seen or heard the attack on Zyniewicz. On December 14, 2012, Kola was charged with misdemeanor battery for the incident.

The charges against Kola were eventually dropped. Subsequently, on December 13, 2013, Kola filed the nine-count Complaint in this case, which asserts substantive federal and state law

claims for false arrest, false imprisonment, malicious prosecution, and conspiracy. (Dkt. No. 1.)[1] The Complaint names the following defendants: the Village of Harwood Heights; Commander John DeVries, the police officer with the Village of Harwood Heights who allegedly caused Kola to be arrested and prosecuted; and Zyniewicz.[2] In the Complaint, Kola alleges that Commander DeVries lacked probable cause to place him under arrest, persisted in Kola's prosecution despite having evidence that Kola was innocent, wrongfully withheld exculpatory evidence from Kola in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and conspired with Zyniewicz to extort money from Kola by means of a planned civil lawsuit. Currently before the Court is the motion to dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Commander DeVries and the Village of Harwood Heights (the "Motion"). (Dkt. No. 12.) For the reasons stated below, the Motion is granted.

## BACKGROUND

The following allegations are taken from the Complaint and attached exhibits.[3] On November 12, 2012, the Landmark Pub, an establishment in Harwood Heights, Illinois owned by Kola, held a charitable benefit for a Chicago police officer. (Compl. ¶¶ 4, 7, Dkt. No. 1.) Sergeant Robert Rentner of the Chicago Police Department, one of the benefit's sponsors, and Zyniewicz

---

[1] Count IX of the Complaint consists only of a claim based on the Village of Harwood Heights's obligation under 745 ILCS 10/9-102 to indemnify Commander DeVries for any judgment based on conduct within the scope of his employment.

[2] Although the Complaint includes Zyniewicz as a defendant in the caption and repeatedly refers to him as "Defendant Zyniewicz" in its allegations, none of the counts actually purports to seek judgment against Zyniewicz or damages from him. Zyniewicz himself has not appeared or responded to the Complaint despite being served on December 20, 2013. Nonetheless, even though Zyniewicz has not joined the Motion, the same arguments that require dismissal of the claims against the moving defendants apply equally to Zyniewicz to the extent Kola intends to assert such claims against him.

[3] For the purposes of the Motion, the Court accepts as true all well-pleaded allegations set forth in the Complaint and draws all reasonable inferences in Kola's favor. *See Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

were both at Landmark Pub that evening. (*Id.* ¶¶ 7-10.) At around 10:00 p.m., Kola removed an intoxicated Zyniewicz from the pub. (*Id.* ¶ 14.) At some point after Zyniewicz was removed from the pub, he was a victim of an attack. Another pub customer, Kieran Taylor, found Zyniewicz near the parking lot of a church across the street and called the paramedics. (Compl. Ex. 1 at 2; Ex. 4 at 2.)

Initially, Zyniewicz did not identify his assailant. Zyniewicz spoke with a Harwood Heights Police Officer, Brandon Cusack, three days after the incident and stated that he was physically attacked by an unknown assailant. (Compl. ¶ 11.) The case report narrative prepared by Cusack, which has a "reported" date of November 15, 2012, states that Daniel Donnelly accompanied Zyniewicz to the Harwood Heights Police Department. (Compl. Ex. 1 at 2.) Donnelly told the police that he had spoken with a bartender named Toni Brooms, who told him that a bartender named "Carly" was working the night of the benefit and "observed Mr. Kola forcefully push the victim out of the bar and across the street to the lot of the Bethel Church." (*Id.*) The report further states that "Carly then observed Mr. Kola then repeatedly punch and kick the victim and then urinate on him as he lay on the ground, unconscious." (*Id.*) The report notes that Carly contacted the paramedics. (*Id.*)

In investigating the alleged attack on Zyniewicz, Commander DeVries also interviewed a number of individuals, including: Sergeant Rentner; Taylor, the customer who dialed 911; Carly Hagglund, a bartender working at the pub that night; and Siobhan Mischke and Roberta Inzerillo, two other pub employees that were with Hagglund for some portion of that night.[4] (Compl. ¶ 12.) The interviews with Hagglund, Taylor, Mischke, and Inzerillo were all summarized in Commander DeVries's police report dated December 14, 2012 describing his investigation of the

---

[4] Kola alleges, on information and belief, that Commander DeVries also interviewed other Chicago police officers who substantiated Sergeant Rentner's claims. (Compl. ¶ 17.)

case. However, the December 14, 2012 report did not mention the interview with Sergeant Rentner. (*Id.* ¶ 19.)

Sergeant Rentner, however, prepared a memo describing his meeting with Commander DeVries and provided it to his commander on November 21, 2012. (Compl. Ex. 2.) In that memo, Sergeant Rentner stated that he "never saw anyone battering or doing harm to the victim," and that he did not believe Kola could have committed the attack on Zyniewicz. (Compl. ¶¶ 15-16 & Ex. 2 at 2.) Sergeant Rentner stated that he saw Kola walk Zyniewicz out of the pub, and then saw him afterwards on the front steps of the pub smoking. (Compl. Ex. 2 at 2.) According to Sergeant Rentner, Zyniewicz was "highly intoxicated" and "taking other patrons beer from the bar top and drinking them being that the bartender refused to serve the intoxicated patron." (*Id.*)

Hagglund, the bartender, was interviewed on November 15, 2012, and told police that "she observed John Kola throw the victim out the front door and down the stairs where he struck the ground and did not get up." (Compl. Ex. 4 at 1.) She stated that she "yelled at John to stop at which time John then started kicking the victim in the face, [sic] and mid-section with his foot several times and then urinated on him. The victim never got up or even tried to fight back, John grabbed the victim by his arms and dragged him n/b down the sidewalk of Oriole Ave." (*Id.*) Hagglund then went back into the pub and informed Taylor, who then called 911 on Zyniewicz's behalf. (*Id.* at 2.) Taylor confirmed to police that he "was approached by Carly who was extremely upset about the victim being battered by John Kola." (*Id.*) The other employees, Mischke and Inzerillo stated that they "did [sic][5] see or hear anyone being battered or hear Carly yell at John Kola." (*Id.*)

---

[5] Based on the context, it appears that the word "not" was inadvertently omitted from this sentence of the report. (*See* Compl. Ex. 4 at 2.) The Court assumes this was a typographical error.

On December 12, 2012, Zyniewicz signed a misdemeanor complaint against Kola. (Compl. ¶ 20.) Two days later, on December 14, 2012, Zyniewicz told Commander DeVries that Kola "grabbed him by his left shoulder and with force escorted him out the front door and pushed him down the stairs where he struck the ground … [and he] does not know what happened to him after he was thrown out of the bar." (*Id.* ¶ 22.) That same day, the Harwood Heights Police charged Kola with battery sufficient to cause bodily harm. (*Id.* ¶ 21.) The narrative supplement from December 14, 2012 states that Zyniewicz told officers that, after he had six beers at the pub, Kola "arrived and for unknown reason [sic] asked the victim to leave the bar and when the victim asked why he had to leave the owner grabbed him by his left shoulder and with force escorted him out the front door and pushed him down the stairs where he struck the ground. . . ." (Compl. Ex. 4 at 1.)

In his Complaint in this action, Kola alleges that Zyniewicz was actually attacked by "his cousin or some other unknown party," and that Zyniewicz and Commander DeVries conspired to have Kola falsely arrested, imprisoned, and prosecuted for the attack. (Compl. ¶ 39.) The Complaint further alleges that Zyniewicz previously gave statements to Officer Cusack and a treating physician in which he reported that he was "punched by his cousin in the face." (*Id.* ¶ 52.) At some point after Kola was charged, his counsel issued a subpoena for any documents, notes, or other materials that referred to any interviews of any persons associated with the case. (*Id.* ¶ 33.) Kola now alleges that Commander DeVries failed to tender any documents or information with respect to the interviews with Sergeant Rentner or other police officers, resulting in the wrongful withholding of exculpatory evidence. (*Id.* ¶ 34.)

**DISCUSSION**

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual allegations, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Pleading facts merely consistent with a defendant's liability and pleading legal conclusions disguised as factual allegations are, by themselves, insufficient. *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

The Seventh Circuit has stated that it is proper to "consider documents attached to the complaint as part of the complaint itself." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010); *see* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). In this case, Kola attached to the Complaint the arrest report, the memorandum of the interview with Sergeant Rentner, Zyniewicz's misdemeanor complaint against Kola, and the narrative supplement. Accordingly, it is appropriate to consider those documents in assessing the Motion.

I.  **Kola's Claims Under Federal Law**

   A.  **Unlawful Seizure, False Arrest, False Imprisonment, Malicious Prosecution, and Conspiracy Claims**

The defendants can defeat Kola's federal claims for unlawful seizure (Count I),[6] false imprisonment (Count II), and malicious prosecution (Count III) by establishing the existence of probable cause. *See Venson v. Altamirano*, 749 F.3d 641, 651 (7th Cir. 2014) ("As a matter of law, probable cause defeats a claim for malicious prosecution."); *Thayer v. Chiczewski*, 705 F.3d 237 (7th Cir. 2012) ("The existence of arguable probable cause to arrest Lyttle is an absolute bar to his § 1983 claim for unlawful arrest and false imprisonment.").

"Probable cause depends not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person *in the position of the arresting officer*—seeing what he saw, hearing what he heard." *Mahoney v. Kesery*, 976 F.2d 1054, 1057 (7th Cir. 1992) (emphasis in original); *see also Carmichael v. Vill. of Palatine*, 605 F.3d 451, 457 (7th Cir. 2010) ("The reasonableness of the seizure turns on what the officer knew, not whether he knew the truth or whether he should have known more."); *Driebel v. City of Milwaukee*, 298 F.3d 622, 643 (7th Cir. 2002) ("An officer's belief in the existence of probable cause need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false."). Eyewitness allegations provide probable cause "when the statements, if true, show that a crime has occurred," regardless of whether the person being accused denies the allegations. *Askew v. City of Chicago*, 440 F.3d 894, 895 (7th Cir. 2006). "Police need not conduct an investigation but may arrest and let prosecutors and courts determine

---

[6] For the sake of consistency with the Complaint, the Court refers to Count I as an "unlawful seizure" claim, although the allegations indicate that it is, in fact, a claim for false arrest. (*See* Compl. ¶ 23 ("Defendant DeVries placed Plaintiff under arrest, as described in Paragraph 21, without probable cause to believe that he had committed the offense of battery to cause bodily harm against Defendant Zyniewicz or any other offense.")).

who is telling the truth." *Id.* It is true that the police may have to do more in certain circumstances, such as if they know that "the accuser may harbor a grudge against the accused … or when it is doubtful that the allegations (even if true) add up to a crime." *Id.* However, as the Seventh Circuit explained in *Askew*:

> The idea behind [*Gramenos v. Jewel Companies, Inc.,* 797 F.2d 432 (7th Cir. 1986)] and similar decisions is that police often encounter competing and inconsistent stories. One person makes an accusation; another denies it; police on the scene must act yet lack the tools to determine immediately where the truth lies. The Constitution permits them to initiate the criminal process and leave the sifting of competing claims and inferences to the detective, prosecutors, judges, and juries in the criminal prosecution.

*Id.* at 896. In the present case, the facts, even taken in the light most favorable to Kola, establish that there was probable cause to arrest and prosecute Kola as a matter of law.

The Complaint and attached documents establish that Hagglund told Commander DeVries that she saw Kola attack Zyniewicz. Hagglund stated that she immediately reported what she saw to Taylor, who then dialed 911. Meanwhile, Sergeant Rentner told Commander DeVries that he saw Kola escort Zyniewicz outside twice because Zyniewicz was drunk and disorderly, but that Kola immediately returned after escorting Zyniewicz outside and therefore could not have assaulted him. Thus, the question before the Court is whether Commander DeVries had probable cause to arrest and initiate the prosecution of Kola based on Zyniewicz's complaint and Hagglund's interview, notwithstanding the statement provided by Sergeant Rentner. The Court finds that he did.

As noted above, a single eyewitness can supply probable cause if there is no reason to distrust the information provided. Similarly, a statement by the victim identifying the assailant can also support probable cause. Here, both the victim (Zyniewicz) and an eyewitness (Hagglund) specifically identified Kola as the assailant. Moreover, both Donnelly and Taylor confirmed that Hagglund had told them, at the time of the attack, that Kola was the assailant. While Sergeant

Rentner reported that he did not witness Kola assault Zyniewicz, and furthermore he did not believe it could have happened based on the timing of events, that is not enough to negate the existence of probable cause. A reasonable officer investigating the crime could conclude that the fact that Sergeant Rentner did not see the assault take place did not mean the attack did not happen.

Kola asks the Court to reach a contrary conclusion based on Hagglund's purported lack of credibility. Kola claims that he and Hagglund had been dating and that he broke it off prior to the night of the benefit. He also questions how she could have seen an assault take place when no one else at the benefit did, and points out that two other employees on the pub's deck stated that they did not see the attack or hear Hagglund yelling at Kola about the attack. However, Kola has not alleged that Commander DeVries knew about the prior relationship between Kola and Hagglund, nor does Kola identify any other reason for Commander DeVries to believe that Hagglund had a motive to lie.

Moreover, Kola attributes unwarranted significance to the lack of other eyewitnesses. The Seventh Circuit has made clear that a single eyewitness can provide a sufficient basis for probable cause. While Kola suggests that the lack of additional eyewitnesses proves the attack did not take place, in fact there could be many reasons why other eyewitnesses did not come forward. Perhaps other pub patrons and employees simply were not in a position to see the attack and could not hear it over the noise of the pub. Or, even if others did see or hear something, they might have been reluctant to get involved with a police investigation. Kola's speculation that someone else must have seen or heard the attack if it happened as Zyniewicz and Hagglund described does not provide a basis for this Court to conclude that DeVries reasonably should have determined, or even suspected, that both the victim and the eyewitness were lying. Because the Court finds that

9

there was probable cause to arrest and prosecute Kola, his claim for unlawful seizure and false imprisonment are properly dismissed.

As for his purported malicious prosecution claim under federal law, Kola cannot state a claim under 42 U.S.C. § 1983 for malicious prosecution, since that remedy exists at state law in Illinois. "[T]he existence of a tort claim under state law knocks out any constitutional theory of malicious prosecution and Illinois has a common law tort action for malicious prosecution." *McCann v. Mangialardi*, 337 F.3d 782, 786 (7th Cir. 2003). Furthermore, Kola "cannot do an end run around the foregoing precedent by combining what are essentially claims for false arrest under the Fourth Amendment and state law malicious prosecution into a sort of hybrid substantive due process claim under the Fourteenth Amendment." *Id.* Accordingly, Kola's federal malicious prosecution claim is also properly dismissed.

Finally, because the Court finds that there was probable cause and therefore no constitutional violation, the conspiracy claim under federal law necessarily fails as well. *See Gramenos v. Jewel Cos.* 797 F.2d 432, 435 (7th Cir. 1986) ("If the arrest was constitutionally unreasonable, then the police are liable under § 1983 without regard to the 'conspiracy', and if not, not.").

### B. Due Process Claim Based on the Defendants' Alleged *Brady* Violation

As part of his federal malicious prosecution claim, Kola alleges that Commander DeVries improperly withheld exculpatory evidence obtained through his interview with Sergeant Rentner. Although Kola includes these allegations under the malicious prosecution heading in his Complaint (*see* Compl. ¶¶ 35-36), this type of claim is more properly considered as a due process

violation based on *Brady v. Maryland*, 373 U.S. 83 (1963).[7] In *Brady*, the U.S. Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. Based on the facts of this case, whether titled as malicious prosecution or a due process violation, Kola cannot prevail on a *Brady*-based claim.

The Supreme Court has stated that "there is never a real '*Brady violation*' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler v. Greene*, 527 U.S. 263, 281 (1999). The Seventh Circuit has also made clear that a *Brady* claim is a trial-based right: "evidence is material for *Brady* purposes only if there is a 'reasonable probability' that its disclosure to the defense would have changed the result of the trial." *U.S. v. Morales*, 746 F.3d 310, 315 (7th Cir. 2014) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)); *see also Bielanski v. Cnty. of Kane*, 550 F.3d 632, 645 (7th Cir. 2008) ("*Brady* requires that the government disclose material evidence in time for the defendant to make use of it at trial."). In *Ray v. City of Chicago*, 629 F.3d 660 (7th Cir. 2011), the Seventh Circuit elaborated further:

> [W]e have permitted individuals to file Section 1983 suits alleging that they have been denied a fair trial because the state has failed to provide them with access to material exculpatory evidence. . . . Ray has failed to identify a single instance, however, where we have allowed such suits when the individual is merely charged with a crime, but never fully prosecuted.

*Id.* at 664. Indeed, "delayed disclosure of evidence does not in and of itself constitute a *Brady* violation." *United States v. O'Hara*, 301 F.3d 563, 569 (7th Cir. 2002). In the *O'Hara* case, for

---

[7] It may be more appropriate to say that, instead of alleging a *Brady* violation on the part of Commander DeVries, Kola is instead alleging that Commander DeVries is "responsible for *causing* a *Brady* violation." *See Johnson*, 878 F. Supp.2d at 920.

example, the evidence was discovered during trial, and the court nonetheless determined that the defendant "had sufficient time to make use of the material disclosed." *Id.*

While a defendant acquitted at trial could potentially sustain a *Brady* claim if he were able to show that "had the officers disclosed that evidence sooner, it would have altered the decision to go to trial," *Mosley v. City of Chicago*, 614 F.3d 391, 397 (7th Cir. 2010),[8] the charges against Kola were dropped by the State before trial and apparently over Kola's objections. (In his response to the Motion, Kola states that his attorney "found out" that Commander DeVries did not disclose the formal interview "prior to trial," and that he "demanded a trial" but "the State refused and dropped the charges." (Pl. Resp. at 7-8, Dkt. No. 18.)) Because Kola concedes that he did not proceed to trial and that the State dropped the charges against him, he does not state a viable claim based on the alleged *Brady* violation.

## II.  Kola's Claims Under Illinois State Law

In addition to his federal claims, Kola also asserts claims under Illinois state law for false arrest (Count V), false imprisonment (Count VI), malicious prosecution (Count VII), and conspiracy (Count VIII). Because there was probable cause to arrest and prosecute Kola, these claims must be dismissed as well.

In Illinois, the existence of probable cause defeats a false arrest claim, as "an arrest is 'false' only if it is made without probable cause." *Brown v. Vill. of Romeoville, Ill.*, 407 Fed. Appx. 56, 58 (7th Cir. 2011) (citing *Meerbrey v. Marshall Field & Co.*, 139 Ill.2d 455, 151 Ill. Dec. 560, 564 N.E.2d 1222, 1231 (1990) and *Ross v. Mauro Chevrolet*, 369 Ill. App. 3d 794, 308 Ill. Dec. 248, 861 N.E.2d 313, 317 (Ill. App. Ct. 2006)). "The essential elements of a cause of action for false arrest or false imprisonment are that the plaintiff was restrained or arrested by the

---

[8] The court in *Mosley* did not decide whether an acquitted defendant may proceed with a *Brady* claim, and instead "reserve[d] the question of whether our circuit recognizes a claim for a *Brady* violation when the trial results in an acquittal for a later case…." *Id.* at 398.

12

defendant, and that the defendant acted without having reasonable grounds to believe that an offense was committed by the plaintiff." *Meerbrey*, 139 Ill.2d 455, 564 N.E.2d at 1231. Similarly, malicious prosecution claims also require "proof that the defendant commenced or continued a criminal proceeding without probable cause." *Brown*, 407 Fed. Appx. at 58 (citing *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 681-82 (7th Cir. 2007) and *Ross*, 308 Ill. Dec. 248, 861 N.E.2d at 319). For the reasons discussed above, Kola cannot establish that there was no probable cause to arrest and prosecute him. Accordingly, his state law claims for false arrest, false imprisonment, and malicious prosecution fail as a matter of law.

As for his state law civil conspiracy claim, in order to prevail under Illinois law, Kola must establish "(1) an agreement between two or more persons for the purposes of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007). In this case, Kola cannot satisfy the second element. As discussed above, all of the state torts alleged by Kola require proof of lack of probable cause. In light of the Court's finding that there was probable cause for Kola's arrest and prosecution, the state law conspiracy claim must be dismissed. *See Johnson v. Dossey*, 878 F. Supp. 2d 905, 918 (N.D. Ill. 2012).

### III. Qualified Immunity

Finally, in the Motion, Commander DeVries argues that even if there were no probable cause to arrest and prosecute Kola, he would be entitled to qualified immunity from suit. As the Court finds that there was no constitutional violation, there is no need to consider whether Commander DeVries's actions would nonetheless be protected by qualified immunity. *See Mucha v. Vill. of Oak Brook*, 650 F.3d 1053, 1057 (7th Cir. 2011).

## **CONCLUSION**

For the reasons stated above, Defendants' motion to dismiss the Complaint is granted in its entirety.

Dated: August 14, 2014

Entered:

_____
Andrea R. Wood
United States District Judge